**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHNATHAN MCFARLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-cv-01315-AGF |
| | ) | |
| 21st JUDICIAL CIRCUIT, ST. LOUIS | ) | |
| COUNTY, MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motions of plaintiff Johnathan McFarland for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2; Docket No. 5). Having reviewed the motions, the Court finds they should be granted. *See* 28 U.S.C. § 1915(a)(1). Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8ᵗʰ Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8ᵗʰ Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8ᵗʰ Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8ᵗʰ Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8ᵗʰ Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Background

Plaintiff is a self-represented litigant who filed a civil action on November 3, 2021, naming eight separate defendants. (Docket No. 1). In the complaint, plaintiff presented allegations regarding a state court custody action involving his wife and children. Along with the complaint, plaintiff filed a motion for leave to proceed in forma pauperis, as well as a motion for appointment of counsel. (Docket No. 2; Docket No. 3).

On February 14, 2022, plaintiff filed an amended complaint, which appears similar to the original, with the exception that one defendant has been "rescinded," and five new defendants added. (Docket No. 4). He also submitted a second motion for leave to proceed in forma pauperis, and a second motion for appointment of counsel. (Docket No. 5; Docket No. 6).

### The Amended Complaint

Plaintiff's amended complaint has been construed as arising under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 389 (1971). He names a total of thirteen defendants, though one of those defendants – former Federal Bureau of Investigation (F.B.I.) Director J. Edgar Hoover – has been crossed out. (Docket No. 4 at 23-25). The remaining defendants are: (1) Judge Ellen Dunne; (2) Judge Jason Dodson; (3) Court Liaison Jessica Meredith; (4) the F.B.I.; (5) the 21st Judicial Circuit Court; (6) the United States Judicial Branch; (7) the United States of America; (8) Judge McKee; (9) the City of St. Louis; (10) Katie Gore; (11) Gary Gore; and (12) Patricia Gore. Plaintiff does not indicate the capacity in which defendants Dunne, Dodson, Meredith, McKee and the Gores are sued.

With regard to jurisdiction, plaintiff states that his case implicates article 1, section 8 of the United States Constitution, as well as the First, Fourth, Fifth, and Fourteenth Amendments. (Docket No. 4 at 3). He also notes that he is suing the United States of America and the United States Supreme Court.

Plaintiff's "Claim for Relief" consists of twelve typewritten pages. He begins by asserting that he and his wife "went to court in 2019 over an order of protection," after plaintiff's "wife had begun to act uncouth." (Docket No. 4 at 11). He "asked the courts for help," explaining "new and developing behavior patterns" he attributed to his wife. Despite his insistence that his wife's "behavior was not normal," Judge Dunne of the 21st Judicial Circuit Court "did not think it

3

mattered," and allegedly violated his civil rights when she gave his wife their house and custody of their children. After being "removed" from his house, plaintiff asserts that his wife "continued to behave like she had no control."

Plaintiff states that Judge Dunne "judged [him] by the color of [his] skin and sex," and "was incensed that [he] would dare say that" his wife "was lying." Despite being "a level headed individual" who did not have to be warned or corrected in court, Judge Dunne "did not want to hear anything [he] had to say." Plaintiff was "appalled" that Judge Dunne asked only "one question through the whole proceedings," and allowed his wife to accuse him "of things that [he] was proving [he] did not do."

According to plaintiff, Judge Dunne "made [him] a criminal." He states that he "was choked by the police in front of [his] son one day because [his] wife said she was scared of [him]." Plaintiff further states that Judge Dunne "never considered [him] a person at all," that his "words fell on deaf ears in her court," that "[s]he did not follow Local Court Rules in her court," and that his wife's evidence "did not meet the standards of the courtroom."

As a result, plaintiff concludes that Judge Dunne violated the Fourth, Fifth, and Fourteenth Amendments by her ruling. (Docket No. 4 at 12). In doing so, he states that Judge Dunne "destroyed [his] family for her bias," and that his "wife is in shambles." Plaintiff believes that Judge Dunne's ruling "voided" preexisting agreements between himself and his wife, which has hurt his children and "excused [his] wife of any accountability," causing him "immeasurable pain, suffering, anxiety, [and] duress." In a handwritten notation, plaintiff has added that "Judge Dunne destroyed evidence [he] submitted that contained a signed marriage license granted by the City of St. Louis," as well as "evidence of defendant's 11 irresponsible behaviors of sleeping with various men and her drunken episodes."

4

Regarding Judge Dodson, plaintiff asserts that Dodson has violated his right to free speech. (Docket No. 4 at 13). He notes that in Judge Dodson's courtroom, he is paired with Court Liaison Meredith, who has accused him of "threatening to bring people into the court to shoot up the court." Plaintiff states that he was "offended" by Court Liaison Meredith. He is also upset because the court seemed to be trying to teach him to communicate, which he feels "is not the duty of this court."

Plaintiff states that on his "last court date," on October 8, his "filing with [the] court was dismissed." According to plaintiff, Judge Dodson told him "in a sadistic voice" that Dodson was "not going to let [plaintiff] go because some things have been brought to [Dodson's] attention." Plaintiff states that he has not broken the law, that he has "proven that the person this court is trying to protect is indeed a liar," and that he needs "to end proceedings in this court post haste." Additionally, plaintiff notes that "[t]he court dates impede on [his] life, making [him] subject to rushing, forgetting, and taking up [his] valuable time." He does not think that Judge Dodson acknowledges that he has "a real life," and that the court is operating under a "stereotypical" assumption regarding black men. (Docket No. 4 at 13-14).

With regard to Court Liaison Meredith, plaintiff states that Meredith gave him legal advice on filing paperwork with the court. (Docket No. 4 at 13). Afterward, "she told the judge as if to get [plaintiff] in trouble." Plaintiff believes that Court Liaison Meredith "does not belong in her position as she has a bias of some sort," that "[h]er actions amount to some criminal behavior," that she "has omitted certain facts," and "has also lied on [him] to the judge." He also states his belief that Court Liaison Meredith told Judge Dodson "something about [his] behavior that was detrimental to" him, but does not specify this statement's contents.

Concerning Former F.B.I. Director Hoover, plaintiff has crossed out Hoover's name and noted that he is "rescinded" as a defendant. (Docket No. 4 at 15). Nevertheless, the "Claim for Relief" still contains allegations accusing Former Director Hoover of infringing "upon the rights of African Americans utilizing the Federal Government and its Agents," and also establishing "police policy to over-police African Americans." Despite "hindering the Civil Rights Era," plaintiff observes that Former Director Hoover has been "celebrated by the United States Government," and has been "honored by having his name on the Headquarters of the F.B.I. in Washington, DC."

With regard to the F.B.I. itself, plaintiff states that the agency "bears the burden of having been the organization instrumental in stopping the rise of the African American into a normal position among America's citizens." He also alleges that both Former Director Hoover and the F.B.I. "have violated [his] civil rights and [the rights] of countless others."

As to the 21st Judicial Circuit Court, plaintiff alleges that "[t]he courthouse has been racist for a long time," and that he "can prove it with a survey if the court so desires." (Docket No. 4 at 16). He feels that racism is "widely accepted in this courthouse," resulting in "fabricated and omitted information to discredit [him] before Judge Dodson." Plaintiff asserts that despite being well spoken and keeping a level head, he is "aghast at what happens to other men in this situation," and notes that "[i]t is  unfair to make black men beg for freedom because they are black."

In reference to the United States Judicial System, plaintiff alleges that it "is guilty of persecuting African Americans…by exacting punishment harsher than that of white criminals," and that the inherent racism "in our judicial system cannot be denied." (Docket No. 4 at 17). He states that the United States Judicial System has violated his "Constitutional Rights to peace and the pursuit of happiness," and has undermined his ability to raise his children. As to the United

States itself, plaintiff asserts that it is "complicit in all charges," that many presidents "have been racist," that "[t]here have been many actions against…African Americans from this seat of power," and that plaintiff will use "[a] large part of the relief…to conduct studies to determine the best ways to find remediation."

Regarding Judge McKee, plaintiff alleges that she "started the court proceedings in…a way that was disrespectful of [his] time and effort," that she "is [negligent] and irresponsible for a person in her position," and that she has given Katie Gore additional time to obtain an attorney. (Docket No. 4 at 18). For these reasons, he contends that Judge McKee is biased and has denied him due process.

As to the City of St. Louis, plaintiff states that the city "is responsible for destroying the original marriage license with its signatures." (Docket No. 4 at 19). He also accuses the city of negligence and of showing "a sex and gender bias."

With regard to Katie Gore, plaintiff alleges that she committed "perjury in court" and destroyed his "right to parent [his] child," along with defaming his character and insulting his "intelligence and patience." (Docket No. 4 at 20). He also asserts that Katie Gore is abusing his children by telling them he is incompetent. According to plaintiff, Patricia Gore "is guilty of aiding and abetting" Katie Gore "in the defamation of [his] character." (Docket No. 4 at 22).

Finally, concerning Gary Gore, plaintiff contends that Gore "has harassed [him] by being outside of [his] home in the dark of night inside his truck on the night of October 19, 2021." (Docket No. 4 at 21). He states that Gary Gore "has threatened [him] before and is known to be a hothead," and "has also committed to the lie that defames [his] character."

Based on these allegations, plaintiff asserts that his constitutional rights have been attacked, and that he has had his "parenting capacity" taken away from him. (Docket No. 4 at 26). In

particular, he notes that he has "lost two years with [his] children." He seeks $13 million in damages to be split between the Federal Government and the 21st Judicial Circuit Court. (Docket No. 14 at 26). Plaintiff also requests an additional $1.2 million from the City of St. Louis, a house and vehicle from Katie Gore, and proceeds from the sale of Gary and Patricia Gore's property. (Docket No. 4 at 27). He further demands a number of changes, such as removing Former Director Hoover's name from buildings and monuments, improving schools, and adding Fred Hampton's name to the F.B.I. Building. (Docket No. 4 at 26-27).

## Discussion

Plaintiff is a self-represented litigant who brings this civil action against twelve separate defendants, alleging the violation of his constitutional rights stemming from the decision of a state circuit court to give his wife custody of their children. Because plaintiff is proceeding in forma pauperis, the Court has reviewed his amended complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### A.  Construction of Amended Complaint As Arising under 42 U.S.C. § 1983 and *Bivens*

Plaintiff states that the Court has federal question subject matter jurisdiction over this case because of the violation of his rights under article 1, section 8 of the United States Constitution, and the First, Fourth, Fifth, and Fourteenth Amendments. (Docket No. 4 at 3). He has also named a federal agency, the federal judiciary, and the United States itself as defendants.

Because plaintiff is alleging constitutional violations, the Court has construed his claims as arising under both 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 389 (1971). As such, the claims against Judge Dunne, Judge Dodson, Judge McKee, Court Liaison Meredith, the 21st Judicial Circuit Court, and the City of St. Louis – four state employees, a state court, and a municipality – will be analyzed under § 1983.

8

*See Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails").

Meanwhile, the claims against the F.B.I., the United States Judicial System, and the United States will be analyzed under *Bivens*. *See Buford v. Runyon*, 160 F.3d 1199, 1203 n.6 (8th Cir. 1998) (explaining that, generally speaking, "[a] *Bivens* claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights"). Of course, as a practical matter, "[a]n action under *Bivens* is almost identical to an action under [42 U.S.C. §] 1983, except that the former is maintained against federal officials while the latter is against state officials." *See Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999). This means that claims under *Bivens* and claims under § 1983 involve the same analysis. *Solomon*, 795 F.3d at 789 n.7. Furthermore, the body of case law regarding § 1983 applies to *Bivens* actions. *Id*.

**B.  Claim Against 21st Judicial Circuit Court**

Plaintiff has named the 21st Judicial Circuit Court, a Missouri state court, as a defendant. However, state courts as entities are not vulnerable to suits pursuant to 42 U.S.C. § 1983 because they are protected by Eleventh Amendment immunity. *Mildfelt v. Circuit Court of Jackson Cty., Mo.*, 827 F.2d 343, 345 (8th Cir. 1987). *See also Harris v. Missouri Court of Appeals, Western Dist.*, 787 F.2d 427, 429 (8th Cir. 1986) (stating that "courts as entities are not vulnerable to § 1983 suits, because they are protected by state immunity under the eleventh amendment"). Therefore, plaintiff's claim against the 21st Judicial Circuit Court must be dismissed.

### C. Official Capacity Claims Against State of Missouri Employees

Plaintiff has not indicated the capacity in which Judge Dunne, Judge Dodson, Judge McKee, and Court Liaison Meredith have been sued. A plaintiff can bring a 42 U.S.C. § 1983 claim against a public official acting in his or her official capacity, his or her individual capacity, or both. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). However, if a plaintiff's complaint is silent about the capacity in which the defendant is being sued, the complaint is interpreted as including only official capacity claims. *Id. See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity"); *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) ("If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims").

As noted above, plaintiff has not indicated the capacity in which he is suing defendants Dunne, Dodson, McKee, and Meredith. Thus, the claims against them are treated as being made in their official capacities.

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson*, 172 F.3d at 535. *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a

suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Plaintiff has alleged that defendants Dunne, Dodson, McKee, and Meredith are state employees, working for the 21st Judicial Circuit Court. As such, the official capacity claims against them are treated as being made against the State of Missouri itself, their employer. To prevail on an official capacity claim, plaintiff must show the State of Missouri's liability for the alleged conduct. *See Kelly*, 813 F.3d at 1075.

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983").

In this case, plaintiff appears to be seeking only money damages from the State of Missouri. Thus, as discussed above, the state does not constitute a "person" for purposes of a 42 U.S.C. § 1983 claim. Because he is missing an essential element of a § 1983 cause of action, the claim must be dismissed.

Furthermore, plaintiff's official capacity claims are barred by sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); and *Egerdahl*, 72 F.3d at 618-19 ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). Likewise, "[a] claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment." *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception does not apply because the Supreme Court has determined that 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment

immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception also does not apply because the State of Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is in effect, and providing exceptions).

As previously noted, plaintiff appears to be seeking only damages from the State of Missouri. Therefore, the official capacity claims against defendants Dunne, Dodson, McKee, and Meredith are barred by sovereign immunity. Furthermore, there is no indication that any exception to sovereign immunity exists in this case. As such, plaintiff's official capacity claims against Judge Dunne, Judge Dodson, Judge McKee, and Court Liaison Meredith must be dismissed.

To the extent that plaintiff's amended complaint can somehow be construed as containing a request for prospective injunctive relief against the State of Missouri, the Court notes that plaintiff has not established the State of Missouri's liability for violating his constitutional rights. Such liability may be established by showing that a governmental entity has an unconstitutional policy or custom, or has been deliberately indifferent in failing to train or supervise its employees. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). Plaintiff's facts, such as they are, do not support – or even suggest – the proposition that he was harmed by a policy, custom, or failure to train on the part of the State of Missouri. For this reason as well, the official capacity claims against Judge Dunne, Judge Dodson, Judge McKee and Court Liaison Meredith must be dismissed.

### D.  Individual Capacity Claims Against State of Missouri Employees

Even if the Court was to treat Judge Dunne, Judge Dodson, Judge McKee, and Court Liaison Meredith as being sued in their individual capacities, the claims would still be subject to dismissal. Judges Dunne, Dodson, and McKee are immune from suit, while Court Liaison Meredith has not been shown to be personally responsible for a constitutional violation.

### i.     Judge Dunne, Judge Dodson, and Judge McKee Have Judicial Immunity

Based on the premise that a judicial officer should be free to act upon his or her own convictions, judicial immunity provides a judge with immunity from suit. *Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 925 (8th Cir. 2020). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This immunity applies even when the judge is accused of acting maliciously or corruptly. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1090 (8th Cir. 2018) (stating that "judicial immunity is not overcome by allegations of bad faith or malice"). Moreover, "a judge will not be deprived of his immunity because the action he took was in error or was in excess of his authority." *Justice Network, Inc. v. Craighead Cty.*, 931 F.3d 753, 760 (8th Cir. 2019).

A judge's immunity from 42 U.S.C. § 1983 actions bars a plaintiff's recovery in all but two narrow sets of circumstances. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). First, a judge does not have immunity for non-judicial actions. *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982). *See also Justice Network, Inc.*, 931 F.3d at 760 (stating "that to

determine whether an act is judicial, courts look to the particular act's relation to the general function normally performed by a judge").

Second, a judge is not immune from lawsuits based on actions taken in the complete absence of jurisdiction. *Duty*, 42 F.3d at 462. This is the case even if the judge's actions were judicial in nature. *Schottel*, 687 F.3d at 373. In the context of judicial immunity, however, the scope of the judge's jurisdiction is construed broadly. *Justice Network, Inc.*, 931 F.3d at 762. "[A]n action – taken in the very aid of the judge's jurisdiction over a matter before him – cannot be said to have been taken in the absence of jurisdiction." *Mireles*, 502 U.S. at 13.

In this case, Judge Dunne, Judge Dodson, and Judge McKee are entitled to judicial immunity. Though plaintiff's facts are vague and conclusory, it is clear that he is complaining about decisions these judges made when plaintiff appeared in their courts. There is nothing to suggest that plaintiff is accusing Judge Dunne, Judge Dodson, and Judge McKee of taking a non-judicial action. Likewise, there are no facts to support the proposition that these judges acted in the complete absence of jurisdiction. Rather, plaintiff simply appears upset that certain rulings were not made in his favor, and intimates that those rulings came about because of his race and gender. As noted above, however, judicial immunity applies even if a judge acted in bad faith or malice. Therefore, even if plaintiff had sued Judge Dunne, Judge Dodson, and Judge McKee in their individual capacities, the claims must be dismissed.

Immunity aside, plaintiff has still failed to assert individual capacity claims against Judge Dunne, Judge Dodson, and Judge McKee. Liability in a 42 U.S.C. § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the

deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In this case, plaintiff has not connected any act or omission on the part of these judges with the violation of one of plaintiff's constitutional rights. That is, plaintiff entirely fails to identify any link between a ruling or order of Judge Dunne, Judge Dodson, and Judge McKee, and an alleged violation of the First, Fourth, Fifth, or Fourteenth Amendments. For this reason as well, any individual capacity claim against Judge Dunne, Judge Dodson, and Judge McKee must be dismissed.

### ii.     No Allegations that Court Liaison Meredith Committed a Constitutional Violation

As noted above, individual liability in a 42 U.S.C. § 1983 case can only be asserted against a person for "their own misconduct." *See S.M.*, 808 F.3d at 340. That is, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga*, 442 F.3d at 1132. Plaintiff must allege facts connecting Court Liaison Meredith to the challenged action. *See Bitzan*, 916 F.3d at 717. He has not done that.

Based on the facts presented, it is not entirely clear what role Court Liaison Meredith played in plaintiff's state cases. Nevertheless, it is apparent that he is upset about information that Court Liaison Meredith provided to the court. While indicating that it was detrimental to him, plaintiff does not explain with any specificity the contents of the submitted information. Certainly,

he does not present facts showing that Court Liaison Meredith acted unconstitutionally in providing the information to the judge, or that it led to a violation of his constitutional rights. Because he has failed to allege a causal connection between something Court Liaison Meredith did or did not do, and a violation of his rights, he has not stated an individual capacity claim. Therefore, even if Court Liaison Meredith had been sued in an individual capacity, the claim must be dismissed.

### E.  Claim Against Former Director J. Edgar Hoover

In his amended complaint, plaintiff appears to indicate that he no longer desires to sue Former Director Hoover. However, there are still allegations presented against him. To the extent that he is attempting to sue Hoover, the Court has determined that this claim is frivolous. Pursuant to 28 U.S.C. § 1915, a court may dismiss a complaint as frivolous if it lacks an arguable basis in law or fact. *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992). When dealing with factual frivolity, courts are given "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Such a dismissal encompasses allegations that are fanciful, fantastic, and delusional. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.*

It is obvious that Former Director Hoover is deceased. In point of fact, Former Director Hoover died on May 2, 1972,[1] long before any of the experiences mentioned by plaintiff in this amended complaint occurred. Perhaps as a result of this reality, plaintiff fails to provide any facts

---

[1] *See* Fred P. Graham, *J. Edgar Hoover, 77 Dies; Will Lie in State in Capitol*, N.Y. Times, May 3, 1972, https://www.nytimes.com/1972/05/03/archives/j-edgar-hoover-77-dies-will-lie-in-state-in-capitol-j-edgar-hoover.html, accessed Jan. 27, 2022.

showing that Former Director Hoover did – or could have done – anything to harm him or violate his constitutional rights. Instead of providing any support for the proposition that he is entitled to relief from Former Director Hoover, plaintiff broadly asserts that Hoover engaged in behavior detrimental to African Americans. At no point, however, does he make a connection between those past events, and any harm suffered by plaintiff in the present. For these reasons, plaintiff's "factual contentions" against deceased Former Director Hoover "are clearly baseless" and subject to dismissal on the basis of frivolity.

To the extent that plaintiff's amended complaint can be construed as being against the current director of the F.B.I., the claim likewise results in dismissal. First, an official capacity claim in a *Bivens* suit against a federal employee is treated as being made against the United States. *See Buford*, 160 F.3d at 1203. However, "[i]t is well settled that a *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity." *Id*. *See also Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir. 1982) ("*Bivens* and its progeny does not waive sovereign immunity for actions against the United States; it implies a cause of action only against federal officials").

Second, an individual capacity claim would fail because plaintiff has not established the F.B.I. director's personal responsibility for harming him. As noted above, a *Bivens* claim involves the same analysis as a 42 U.S.C. § 1983 claim, including the use of § 1983 case law. *See Solomon*, 795 F.3d at 789 n.7. Individual liability in a § 1983 case "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga*, 442 F.3d at 1132. Plaintiff has not alleged that the F.B.I. director is in any way responsible for a constitutional deprivation. Thus, even if the current F.B.I. director was substituted for deceased Former Director Hoover, the claim must be dismissed.

18

### F.   Claim Against F.B.I.

Plaintiff has named the F.B.I. as a defendant in this action. A *Bivens* action, however, cannot be brought against a federal agency. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) (refusing to expand *Bivens* "to agencies of the Federal Government" because such an expansion was "not supported by the logic of *Bivens* itself"). *See also Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 812 (8th Cir. 2008) ("*Bivens* allows for a cause of action for damages against federal officials, not federal agencies, for certain constitutional violations"). The F.B.I. is a federal agency, and not subject to suit under *Bivens*. Therefore, the claim against the F.B.I. must be dismissed.

### G.   Claims Against United States Judicial System and the United States

Plaintiff has also named both the United States Judicial System and the United States itself as defendants. "Generally, sovereign immunity prevents the United States from being sued without its consent." *Iverson v. United States*, 973 F.3d 843, 846 (8th Cir. 2020). *See also Hinsley v. Standing Rock Child Protective Services*, 516 F.3d 668, 671 (8th Cir. 2008) (stating that "[i]t is well settled that the United States may not be sued without its consent"). Thus, in order to sue the United States, a plaintiff must show a waiver of sovereign immunity. *See V S Ltd. Partnership v. Dep't of Housing and Urban Development*, 235 F.3d 1109, 1112 (8th Cir. 2000). Such a waiver must be "unequivocally expressed" and "cannot be implied." *See United States v. King*, 395 U.S. 1, 4 (1969). *See also College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999) (stating that "in the context of federal sovereign immunity…it is well established that waivers are not implied").

A *Bivens* action is not an exception to sovereign immunity. To the contrary, sovereign immunity bars a plaintiff from prosecuting a *Bivens* action against the United States. *See Correctional Services Corp. v. Malesko*, 534 U.S. 61, 72 (2001) (explaining that a federal prisoner

19

in a Bureau of Prisons facility could allege a constitutional violation against an individual officer, but could "not bring a *Bivens* claim against the officer's employer, the United States, or the BOP"). *See also Searcy v. Donelson*, 204 F.3d 797, 798 (8th Cir. 2000) (stating that a "*Bivens* action cannot be prosecuted against United States because of sovereign immunity"); and *Buford*, 160 F.3d at 1203 ("It is well settled that a *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity"). Nothing in the amended complaint asserts any other basis on which the sovereign immunity of the United States might have been waived.

In this case, sovereign immunity prevents plaintiff from suing the United States Judicial System and the United States. Therefore, the claims against these two defendants must be dismissed.

## H.  Claim Against the City of St. Louis

In his amended complaint, plaintiff has added the City of St. Louis as a defendant. A local governing body such as the City of St. Louis can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, a municipality cannot be held liable merely because it employs a tortfeasor. *A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory"). Rather, to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick*, 883 F.3d at 1079. *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training,

which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of the City of St. Louis.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). In this case, plaintiff has not alleged facts supporting the proposition that his rights were violated due to a City of St. Louis policy, custom, or failure to train.

First, as to policy, plaintiff's amended complaint contains no indication that "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [City of St. Louis's] governing body" is at issue in this case. Certainly, he has presented no facts showing that his "original marriage license with its signatures" was destroyed due to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Aside from any specific allegations, plaintiff has also not presented sufficient facts to support the proposition that an unconstitutional policy exists. Plaintiff's facts, such as they are, appear to allege a constitutional violation based on the purported destruction of

his marriage license. However, the Court cannot infer the existence of an unconstitutional policy or custom from a single occurrence. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991).

Second, as to custom, plaintiff has not alleged the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" City of St. Louis employees, much less that policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. Rather than a pattern, plaintiff makes a single, unsupported allegation regarding the destruction of his marriage license. This single instance does not constitute a "persistent pattern."

Third, for the same reason, plaintiff has not shown that the City of St. Louis has been deliberately indifferent in failing to train or supervise its employees. Deliberate indifference can be established by showing that the City of St. Louis "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Typically, notice is demonstrated by alleging a "pattern of similar constitutional violations by untrained employees." Here, plaintiff has not adequately alleged a single constitutional violation, let alone a pattern.

Finally, to the extent that plaintiff seeks to hold the City of St. Louis liable for the actions of its employees, the Court notes that respondeat superior is not available in a 42 U.S.C. § 1983 municipal liability claim. *See A.H.*, 891 F.3d at 728 ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory").

For all these reasons, plaintiff has failed to state a claim against the City of St. Louis. Therefore, the claim must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

## I.  Claims Against Katie, Gary, and Patricia Gore

The amended complaint adds claims against Katie, Gary, and Patricia Gore. In order to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). To that end, a defendant can only be held liable pursuant to § 1983 for actions taken under color of state law. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). *See also Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (stating that § 1983 "imposes liability for certain actions taken under color of law that deprive a person of a right secured by the Constitution and laws of the United States"); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that § 1983 secures constitutional rights from government infringement, not infringement by private parties); and *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997) (stating that pursuant to § 1983, "the challenged conduct must have been committed by one who acts under color of law").

When a private party acts under color of state law, it can be held liable under 42 U.S.C. § 1983. *Crumpley-Patterson*, 388 F.3d at 590. However, a private party may only be held liable "if it is a willful participant in joint activity with the State or its agents." *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009). In order to state a claim against a private party under § 1983, the plaintiff "must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

Here, there is no allegation that the Gores are state actors. Rather, they appear to be private citizens. Furthermore, there is no indication that they were willful participants in a "joint activity

with the State or its agents." Because the Gores are not alleged to have acted under color of state law, plaintiff is missing an essential element of a 42 U.S.C. § 1983 action. Therefore, the claims against these three defendants must be dismissed.

### J. Failure to State a Claim

As discussed above, plaintiff's claims against each of the defendants listed in the amended complaint are subject to dismissal for various reasons. The Court further notes that viewing the amended complaint in its entirety, plaintiff has failed to state a claim that is sufficient to pass initial review. To state a claim, plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility requirement is satisfied when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re SuperValu, Inc.*, 925 F.3d 955, 962 (8th Cir. 2019). In determining plausibility, "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010).

Here, the allegations against the state employees amount to nothing more than the repetition of labels and legal conclusions. Plaintiff accuses the state defendants of violating his civil rights when awarding custody of his children to his wife, of judging him on the basis of race and gender, and of ordering him to do things he does not want to do. Nowhere, however, does plaintiff provide any facts to support these propositions, instead asking the Court to accept them as true. The Court is not required to do this. *See Glick v. Western Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (stating that a court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts").

25

Likewise, the claims against the Gores amount to the repetition of labels and conclusions, without any supporting allegations that plausibly show these defendants harmed him at all, much less violated his federally protected constitutional rights.

With regard to the federal defendants, plaintiff again fails to demonstrate a plausible claim for relief. The assertions he makes against the F.B.I., its former director, the United States Judicial System, and the United States, all comprise broad and generalized accusations, some of them historical in nature. At no point does he connect any behavior on the part of these defendants with actual harm done to him personally.

Even liberally construing plaintiff's amended complaint, the Court has determined that he has failed to state a claim. As such, for this reason as well, this action must be dismissed.

### K.  Motion to Appoint Counsel

Plaintiff has filed two motions to appoint counsel. (Docket No. 3; Docket No. 6). The motions will be denied as moot as this case is being dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motions for leave to proceed in forma pauperis (Docket No. 2; Docket No. 5) are **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motions for appointment of counsel (Docket No. 3; Docket No. 6) are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 22nd day of February, 2022.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE